UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM M. COLLINS, II,

       Plaintiff,               Case No. 2:14-cv-12031
                                       Judge Sean F. Cox
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (DE 19) AND TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 21)**

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, William M. Collins, II, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability benefits.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

1

Plaintiff's motion for summary judgment (DE 19), the Commissioner's cross

motion for summary judgment (DE 21), and the administrative record (DE 11).

### A.      Background

Plaintiff filed his applications for Supplemental Security Income Benefits

and Child's Insurance Benefits in January 2008, alleging that he has been disabled

since June 10, 2007, at age 19, as a result of a gunshot wound.  (R. at 161-168,

183-193.)  Plaintiff's Childhood Disability Benefits (CDB) and DI applications

were denied during February 2008.  (R. at 74-77, 96-103.)

On March 14, 2008, Plaintiff sought a *de novo* hearing before an

Administrative Law Judge ("ALJ").  (R. at 104-106.)  On June 22, 2010, ALJ

Henry Perez, Jr., held a hearing at which Plaintiff was represented by counsel and

Vocational Expert (VE) Lawrence S. Zatkin testified.  (R. at 27-47.)  On July 13,

2010, ALJ Henry Perez, Jr., determined that Plaintiff was not disabled within the

meaning of the Social Security Act.  (R. at 78-90.)

On September 20, 2010, Plaintiff requested review of the hearing decision.

(R. at 140.)  On June 25, 2012, the Appeals Council remanded the case to the ALJ.

(R. at 91-95.)  ALJ Perez held a hearing on November 2, 2012, at which Plaintiff

was represented by counsel and Vocational Expert (VE) Annette K. Holder

testified.  (R. at 48-73.)  On December 14, 2012, ALJ Perez determined that

Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9-26.)

On January 14, 2013, Plaintiff requested review of the hearing decision. (R. at 6-8.) On March 20, 2014, the Appeals Council denied Plaintiff's request for review. (R. at 1-5.) Thus, ALJ Perez's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action, *pro se*, on May 21, 2014. DE 1.[1] *In its entirety*, Plaintiff's December 19, 2014 motion for summary judgment is two-pages in length. DE 19. In the first sentence of his motion, Plaintiff states that Easter Seals[2] and Sierra Medical Group[3] have each assessed him with a Global Assessment of Functioning (GAF) score of 45. The remainder of his motion states:

> I [have] been under Psychiatric Treatment and Counseling for 6 years. My GAF score is much lower due to my illness. Recently, I [have] been in Inpatient followed by Outpatient Treatment. Each day I suffer due to my mental and physical illness with confusion and lack of concentration. My breathing leads to shortness of breath in both lungs

---

[1] On March 5, 2008, attorney Steven V. Harthorn became Plaintiff's representative. R. at 133-134; *see also*, R. at 211-213, 760. Attorney Harthorn represented Plaintiff at the June 22, 2010 and November 2, 2012 hearings. R. at 27, 48. However, Plaintiff, himself, has filed the May 21, 2014 complaint (DE 1), the IFP application (DE 2), the request for service by U.S. Marshal (DE 3) and the December 19, 2014 motion for summary judgment (DE 19).

[2] *See* R. at 714-738 (Ex. 10F), R. at 783-806 (Ex. 14F).

[3] *See* R. at 760-782 (Sierra Medical Group, P.L.C. records [Ex. 13F]).

3

from being injured.  I am not able to do the activities I once used to do like boys my age.  I ask you to reverse the decision or review.

DE 19 at 2.

Were Plaintiff represented by counsel, his failure to identify or develop his appellate issues would result in a rejection of his motion outright.  Since he is *in pro per*, and allegedly suffering from mental disabilities, I have instead undertaken a thorough review of the record, to determine if the ALJ's opinion is legally and factually grounded.

### B.    Plaintiff's Medical History

In this case, Plaintiff alleges that he has been disabled since June 10, 2007. *See* R. at 183.  Plaintiff's medical records span the period from June 10, 2007 to June 5, 2013.  R. at 232-821 (Exhibits 1F-17F).  Among those the ALJ cited are:

- June 12, 2007 Inpatient Progress Note of Susan J. Seman, D.O. (R. at 245-246)
- June 17, 2007 Discharge Summary of Dr. Seman (R. at 232-234)
- October 31, 2007 notes of neurologist Phillip Friedman, M.D. (R. at 291-292)
- February 15, 2008 Request for Medical Advice from Jacqueline L. Landes (R. at 299)
- February 21, 2008 Physical RFC Assessment by R.H. Digby, M.D., M.P.H. (R. at 298, 300-307)
- April 15, 2008 CT of the thoracic spine (R. at 659-660)
- June 6, 2008 notes of Dr. Friedman (R. at 702)
- August 19, 2008 notes of Dr. Friedman (R. at 701)
- January 16, 2009 notes of Dr. Friedman (R. at 700)
- April 30, 2010 notes of Dr. Friedman (R. at 698-699)

- May 3, 2010 Adult Assessment from Easter Seals – Michigan, Inc. (R. at 722-731)
- May 18, 2010 Easter Seals Progress Note (R. at 715)
- May 2010 prescription for Desyrel (R. at 721)
- May 2010 State of Michigan DHS Medical Examination Report, Psychiatric/Psychological Examination Report and Mental RFC Assessment by K.G. Surendran-Nair, M.D. (R. at 766-768, 769-771, 772-773)
- November 28, 2011 Easter Seals Medication Review Note of Dr. S-Nair (R. at 800-806)
- March 21, 2012 psychiatric report of H. Gummadi, M.D. (R. at 761-763)
- May 1, 2012 Easter Seals Psychiatric Evaluation by Dr. S-Nair (R. at 790-793)
- July 25, 2012 Easter Seals Medication Review Note of Dr. S-Nair (R. at 783-789)
- September 11, 2012 SSA Medical Source Statement of Ability to do Work-Related Activities (Mental) and Law Office Mental Impairment Questionnaire by Dr. S-Nair (R. at 807-809, 810-816)

R. at 15-20.  These records will be discussed in detail as required below.

### C.    Hearing Testimony (November 2, 2012)

#### 1.    Plaintiff's Testimony

Plaintiff Collins testified before the ALJ on November 2, 2012, his second such hearing.  R. at 51-68.  He has graduated from high school.  R. at 55.  His previous work history includes marketing for AT&T and bagging/stocking at Farmer Jack.  R. at 54.

In June 2007, at the age of 19, he was the victim of an assault and gunshot while being robbed at a gas station.  R. at 52, 54, 63.  The bullet pierced his lung, hit his spine and remains behind his heart next to his aorta.  R. at 53.

Plaintiff has not worked since then.  R at 54.  At the time of the assault, Plaintiff would appear to have been in his first year of college, where he was studying to become a paramedic.  He dropped out of college, in part because he was concerned about the effect his difficulty with concentration would have upon his ability to do the job, and never finished.  R. at 55.

Plaintiff testified that he has been receiving treatment for his mental problems from Dr. Surendran-Nair at Easter Seals, including group therapy.  R. at 56.  According to Plaintiff, the group therapy and treatment with Dr. Surendran-Nair do not really help.  He has prescribed Remeron, Desyrel and Seroquel, and these medications help Plaintiff sleep.  R. at 57-58, 62.  He takes the medications when he has flashbacks or goes to sleep and wakes up from the trauma he had.  R. at 58.

Plaintiff testified that he can sit up for no more than 15 to 20 minutes, stand in one place for about five to seven minutes, push about 25 pounds, pick up and carry 35 pounds "at different times, different periods," continuously lift about 15 pounds and occasionally lift 15 pounds.  R. at 58-60.  He doesn't need physical

assistance washing himself, but sometimes people tell him he might want to wash or bathe more often.  R. at 60.[4]

Plaintiff testified that he stays to himself the majority of the day.  Most of the time, he feels the need to lie down.  R. at 61.  Before he gets overwhelmed with uncontrollable thoughts, he goes to sleep.  R. at 61-62.  He naps approximately 15 to 45 minutes, 2 or 3 times per day.  R. at 62.  He does not go out in public by himself and needs the company of someone with whom he is familiar and comfortable to go out.  R. at 63.  He visits with family, but most of the time they come to see him.  He sees friends about three times per month.  R. at 64.

Plaintiff stated that he can concentrate for ten minutes before his mind starts wandering; then he is acting like he is paying attention.  R. at 65.  Plaintiff does not believe that he can do any job eight hours a day, five days per week, and thinks that, in his current mental state, he would not benefit a company.  R. at 65-66.  Yet, he still wants to go back and achieve his dream of becoming a paramedic.  R. at 66.[5]

─────────────────

[4] In his June 22, 2010 hearing, Plaintiff testified that he could walk approximately 100 feet without resting.  R. at 36.  He can sit for about 45 minutes without standing and stand for about 45 minutes without sitting.  R. at 37-38.  He could lift a maximum of 30 pounds.  R. at 41. However, at the November 2, 2012 hearing, Plaintiff testified that he can walk about 10 feet without stopping.  R. at 67-68.  He can sit for about 15 minutes before having to stand up, and he can stand in one place an average of 5-7 minutes.  R. at 58.

[5] The record additionally indicates personal and familial alcohol abuse, and that both parents are or were apparently on disability.  R. at 790, 800.

## 2.    Vocational Expert Testimony

The VE also testified.  R. at 68-72.  She was asked to assume:  a person of Plaintiff's age, education and work experience, as well as conservative exertional limitations of lifting 20 pounds occasionally and 10 pounds frequently; sitting, standing, walking for six hours; routine production and stress; simple job assignments; occasional contact with the public and unskilled.  The VE testified that such a person could perform unskilled work at the light physical demand level. R. at 69.  The ALJ added the limitation of avoiding concentrated exposure to respiratory irritants.  R. at 69-70.  The VE testified that such an individual could perform jobs as a packer, with 3,000 in southeast Michigan; an inspector, with 2,500 in southeast Michigan; and a bench assembler, with 3,200 in southeast Michigan.  R. at 70.

The ALJ asked the VE a second hypothetical in which Plaintiff's testimony was found to be credible and there were certain exertional limitations.  R. at 70. Here, the VE testified that such an individual would be able to perform some unskilled work at the sedentary level with a sit/stand at will option, such as an assembler (approximately 1,600 in southeast Michigan), sorter (1,100 in southeast Michigan) and packer (1,500 in southeast Michigan).  R. at 70-71.

The ALJ asked a third hypothetical, which included consideration of Plaintiff's nonexertional limitations.  Here, the ALJ testified that Plaintiff's

testimony regarding his lack of concentration and paranoia with being around other people would preclude competitive employment, as well as the need to lie down two or three times a day would preclude competitive employment.  R. at 71.

Then, upon examination by Plaintiff's counsel, the VE testified that a maximum of two absences per month would be tolerated in the described positions and employers of unskilled laborers would tend to have less tolerance for absenteeism.  R. at 71-72.

**D.      The Administrative Decision[6]**

---

[6] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?
2.      Does the claimant suffer from one or more severe impairments?
3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ALJ Perez rendered his decision on December 14, 2012.  R. at 9-26.  At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 10, 2007, the alleged onset date.  R. at 14.

At Step 2, the ALJ found that Plaintiff has the severe impairments of status-post gunshot wound to the right shoulder and chest with shortness of breath, post-traumatic stress disorder, and obsessive-compulsive disorder.  R. at 14.

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  R. at 15-16.

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work but with these limitations:  lift 10 pounds frequently and 20 pounds occasionally; sit for six hours in an eight-hour workday; stand for six hours in an eight-hour workday; walk for six hours in an eight-hour workday; must avoid concentrated exposure to respiratory irritants; simple job assignments with routine production and stress; and occasional contact with the public.  R. at 16-20.  Moreover, the ALJ found that Plaintiff has no past relevant work.  R. at 20.

At Step 5, having considered Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  R. at 21.

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

11

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

In addition to the one paragraph motion language cited above in its entirety,

the only other guidance Plaintiff provides on the bases of his claims is found in his

May 21, 2014 complaint:

> I am disabled and unable to work in any capacity.  The [December 14,
> 2012] ALJ decision is factually inaccurate and not supported by the
> facts and circumstances in this case.  I have severe injuries from a
> gunshot sustained in 2007.  There [are] psychiatric impairments that
> prevent employment.  I [cannot] work in any capacity and the
> decisions made in this case are legally incorrect and should be
> reversed.

DE 1 at 2.

The Commissioner opposes Plaintiff's motion, noting that Plaintiff's lowest GAF score in the record appears to be a 50.  DE 21 at 16; *see also*, R. at 763 (Mar. 21, 2012), R. at 819 (June 2013).[7]  In addition, the Commissioner asserts that substantial evidence supports the ALJ's Step 2, Step 3, RFC and Step 5 findings. DE 21 at 16-25.

The Undersigned will address each argument raised in turn.

### 1.    Step 2

The ALJ concluded at Step 2 that Plaintiff has the following severe impairments:  status-post gunshot wound to the right shoulder and chest with shortness of breath, post-traumatic stress disorder, and obsessive compulsive disorder.  In arriving at this conclusion, the ALJ stated that these impairments were determined by medically acceptable evidence, constitute more than slight

---

[7] The GAF scale was used to report a clinician's judgment of an individual's overall level of functioning.  Clinicians selected a specific GAF score within the ten-point range by evaluating whether the individual was functioning at the higher or lower end of the range.  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR). A GAF score of 20 indicated some danger of hurting self or others, or occasionally failing to maintain minimal personal hygiene, or gross impairment in communication.  DSM-IV-TR at 34.  A GAF score of 41-50 was indicative of serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  DSM-IV-TR at 34.  However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders."  *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

abnormalities, and have had more than a minimal effect on Plaintiff's ability to perform basic work activities for a continuous period of 12 months.  R. at 14.

It is questionable whether Plaintiff is challenging the ALJ's Step 2 findings. Even so, "[a]n ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation."  *Winn v. Commissioner of Social Sec.*, No. 14-3499, 2015 WL 3702032, 10 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987)).  Here, ALJ Perez determined Plaintiff had the three aforementioned severe impairments and proceeded with his analysis through Step 5.  Therefore, even if the ALJ in this case erred at Step 2 by omitting a severe impairment, such an error  "may not constitute reversible error . . . ." *Winn*, 2015 WL 3702032 at 10; *see also*, *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.").

    2.    **Step 3**

At Step 3 of the sequential evaluation process, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).

The ALJ concluded at Step 3 that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. As to his determination that the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.06, the ALJ considered both "paragraph B" and "paragraph C" criteria. [8] With respect to the "paragraph B" criteria, the ALJ determined that Plaintiff has *mild* limitations in activities of daily living, *moderate* restrictions in social functioning and concentration, and has not suffered any episodes of decompensation. R. at 15-16. With respect to the "paragraph C" criteria, the ALJ opined that Plaintiff's symptoms were not so severe as to render him unable to function outside the area of his home. R. at 16.

---

[8]The listing of impairments includes mental disorders (12.00 – 112.00). "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and **12.06** . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

As with the previous section, it is not clear that Plaintiff is challenging ALJ Perez's Step 3 finding.  Moreover, while I do not doubt the claims in Plaintiff's complaint of "severe injuries from a gunshot" and "psychiatric impairments," these claims do nothing to challenge the ALJ's Step III finding, which credited both. *See*, DE 1 at 2.  The same may be said of Plaintiff's motion for summary judgment, which, *inter alia*, appears to contest the ALJ's discussion of Plaintiff's GAF score and will be addressed below as a general challenge to the ALJ's Step 4 RFC determination.  *See*, DE 19 at 2.  Thus, Plaintiff has not met his burden to successfully challenge the ALJ's Step 3 finding.  *Wilson*, 378 F.3d at 548.

### 3.      RFC

The aforementioned single  paragraph of Plaintiff's motion for summary judgment will be addressed as a general challenge to the ALJ's Step 4 RFC determination.  DE 19 at 2, R. at 16-20.  Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical

findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009)

(quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

> Pursuant to Social Security Rule 96-8p, the RFC assessment must include:
>
> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8-, 1996 WL 374184, at *6-7.

### a.  The RFC Determination is Supported by Substantial Evidence.

The Court should conclude that ALJ Perez's RFC determination is supported by substantial evidence.  Preliminarily, it appears to be consistent with Plaintiff's own testimony regarding his weight restrictions (R. at 59-60) and his ability to concentrate, the ALJ noting that Plaintiff does crossword puzzles, draws and plays the piano.  R. at 15-16, 61-62.  His ability to concentrate is also evident in the clarity of his testimony in the hearing transcript.

Likewise, the ALJ referred to several medical records, explaining that the RFC's limitations of light work without exposure to respiratory irritants were

based upon Plaintiff's history of injuries and ongoing shortness of breath.  R. at 17.

The ALJ's review included Plaintiff's psychiatric records from Easter Seals and

Sierra Medical Group.  R. at 17-19, Ex. 10F, Ex. 13F & Ex. 14F.  This discussion

is littered with citations to GAF scores, such as:

- attributing "significant weight" to the May 17, 2010 GAF score of 65 by Dr. Surendran-Nair (R. at 770);
- the March 28, 2011 GAF score of 60 (R. at 753)
- the November 28, 2011 GAF score of 65 (R. at 800-806, 805)
- the March 21, 2012 GAF score of 50 assessed by Dr. Gummadi (R. at 761-763)
- the May 1, 2012 GAF score of 59 assessed by Dr. Surendran-Nair (R. at 793)
- "little weight" assigned to the September 11, 2012 notes of Dr. Surendran-Nair that Plaintiff's current GAF was 50 and his highest GAF for the past year was 55 (R. at 810).

R. at 18-19.[9]  The ALJ explained that Dr. Surendran-Nair's May 21, 2010 GAF

assessment of 65 was consistent with Plaintiff's own report of his symptoms and

noted:  "he did not pursue psychiatric treatment until nearly three years after the

gunshot wound incident."  R. at 18.[10]

---

[9] The Commissioner's brief refers to a March 7, 2012 GAF score of 65, which is not expressly cited by the ALJ (R. at 18-20, 799, DE 21 at 11).  Here, the omission of a higher GAF score operates to Plaintiff's benefit.  Also, the Commissioner's brief refers to a June 2013 GAF score of 50, which post-dates the ALJ's December 14, 2012 decision (R. at 9-26, 819, DE 21 at 14).

[10] It does appear that the earliest psychiatric record is the May 3, 2010 Easter Seals Adult Assessment.  *See*, R. at 780-781 (Ex. 13F), 722-731 (Ex. 10F).  I note that this first psych consultation occurred just a few weeks before his original ALJ hearing, which took place on June 22, 2010 (R. at 27-47).

Furthermore, the ALJ noted and relied upon numerous other portions of the record which contradict Plaintiff's claim of total disability:

- Dr. Digby's February 21, 2008 assessment that Plaintiff "can be considered light RFC now, with medium projected by end of 12 months."  (R. at 20, 298)

- Dr. Friedman's June 6, 2008 examination revealed a reasonable range of back movements and neurologic examination showed symmetrical reflexes (R. at 20, 702)

- Dr. Friedman's August 19, 2008 notation that Plaintiff believes physical therapy is helpful and assessment that Plaintiff's neurologic examination remains quite stable (R. at 20, 701)

- Dr. Friedman's January 16, 2009 notes showed some increasing discomfort in the left thoracic paraspinal area but also revealed fairly good dynamics of back movements and a stable neurological examination (R. at 17, 700)

- Dr. Friedman's April 30, 2010 notes revealed completely normal objective examination and excellent range of back movements (R. at 17, 698)

- Dr. S-Nair's November 28, 2011 and July 25, 2012 Medication Reviews, which indicate that Plaintiff's prescriptions for Desyrel, Remeron and Seroquel were the same (R. at 19-20, 789, 806)

R. at 17, 18, 20; DE 21 at 22, 24.  Plaintiff does not challenge the ALJ's methodology for assigning weight to the various medical opinions considered.

### b.  Plaintiff Failed to Meet His Burden in Challenging the RFC.

Moreover, Plaintiff has not met the burden required of him to successfully challenge the ALJ's Step 4 RFC determination. *Wilson*, 378 F.3d at 548.  In the substantive paragraph of his motion (DE 19 at 2), Plaintiff claims to have received

GAF scores of 45 from Easter Seals and Sierra Medical Group. However, he

makes no citations to the record in support of this claim. Moreover, while he

mentions 6 years of psychiatric treatment and counseling, a GAF score which is

much lower due to his illness, inpatient and outpatient treatment, suffering each

day with confusion and lack of concentration due to his mental and physical

illness, shortness of breath in both lungs from his injury, and an inability to do

activities he once used to do, these claims do not inform the Court as to which

portion of the ALJ's RFC determination is in error; in other words, Plaintiff has not

shown the Court that the ALJ's RFC determination is not based on substantial

evidence.

### 4.    Step 5

"The claimant bears the burden of proof during the first four steps, but the

burden shifts to the Commissioner at step five." *Wilson v. Commissioner of Social*

*Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing *Walters v. Comm'r of Soc. Sec.,* 127

F.3d 525, 529 (6th Cir.1997)). The Sixth Circuit further explained:

> At step five, the Commissioner must identify a significant number of
> jobs in the economy that accommodate the claimant's residual
> functional capacity and vocational profile. *Jones v. Comm'r of Soc.*
> *Sec.,* 336 F.3d 469, 474 (6th Cir.2003). In many cases, the
> Commissioner may carry this burden by applying the medical-
> vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a
> conclusion of "disabled" or "not disabled" based on the claimant's age
> and education and on whether the claimant has transferable work
> skills. *Wright v. Massanari,* 321 F.3d 611, 615 (6th Cir.2003); *Burton*
> *v. Sec'y of Health & Human Servs.,* 893 F.2d 821, 822 (6th Cir.1990).

> However, if a claimant suffers from a limitation not accounted for by
> the grid, the Commissioner may use the grid as a framework for her
> decision, but must rely on other evidence to carry her burden. *Id.* In
> such a case, the Commissioner may rely on the testimony of a
> vocational expert to find that the claimant possesses the capacity to
> perform other substantial gainful activity that exists in the national
> economy. *Heston,* 245 F.3d at 537–38; *Cline v. Comm'r of Soc. Sec.,*
> 96 F.3d 146, 150 (6th Cir.1996).

*Wilson*, 378 F.3d at 548.

ALJ Perez determined that Plaintiff had no past relevant work.  R. at 20.

Then, at Step 5, considering Plaintiff's age, education, work experience and RFC,

the ALJ concluded that there are jobs that exist in significant numbers in the

national economy that Plaintiff can perform.  R. at 21.  Here, the ALJ relied upon

the VE's testimony as to the first hypothetical that in Southeast Michigan there

were 3,000 packer jobs, 2,500 inspector jobs and 3,200 bench assembler jobs.  *See*,

R. at 21, 69-70.

The limitations which appear in ALJ Perez's RFC determination – light

work, lift 10 pounds frequently and 20 pounds occasionally, sit/stand/walk six

hours in an eight-hour workday, must avoid concentrated exposure to respiratory

irritants, simple job assignments with routine production and stress, and occasional

contact with the public - match the limitations posed by the ALJ and testified to by

the VE.  *Compare* R. at 16, R. at 69-70.  Moreover, the ALJ's hypothetical put

Plaintiff at the unskilled level.  R. at 69.  Thus, the Court should conclude that the

ALJ's Step 5 determination is supported by substantial evidence.[11]

### G.    Conclusion

It is the claimant's burden to prove his RFC.  *See* 20 C.F.R. § 416.912(a);[12]

*Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).[13]  Plaintiff has not satisfied his

burden to challenge the ALJ's RFC finding.  Furthermore, as set forth above, the

Undersigned concludes that substantial evidence supports the ALJ's decision at

each stage of the five step process and ultimately his decision denying benefits.

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for

summary judgment, **GRANT** Defendant's motion for summary judgment, and

**AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

---

[11] This report and recommendation does not address Plaintiff's claim within his December 19, 2014 motion that "[r]ecently, [he has] been in Inpatient followed by Outpatient Treatment."  DE 19 at 2.  "Our substantial-evidence review of the ALJ's decision does not consider new evidence submitted after that decision is rendered."  *Lee v. Commissioner of Social Sec.*, 529 F.App'x 706 (6th Cir. 2013).  Therefore, this report and recommendation does not consider evidence which post-dates the ALJ's December 14, 2012 decision (R. at 9-26), such as the medical record dated June 5, 2013 (R. at 817-821).

[12] "In general, you have to prove to us that you are blind or disabled."  20 C.F.R. 416.912(a).

[13] "If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past."  *Foster*, 279 F.3d at 354 (citing 20 C.F.R. § 404.1520(e)).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 24, 2015                    s/Anthony P. Patti
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE


I hereby certify that on July 24, 2015, a copy of the foregoing document was sent
to parties electronically and by U.S. Mail.


                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti

24